**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CHERYL VELEZ,**

       **Plaintiff,**

**v.**                                                  **Case No: 6:18-cv-1029-Orl-LRH**

**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

# MEMORANDUM OF DECISION[1]

Cheryl Velez ("Ms. Velez") appeals the final decision of the Commissioner of Social Security ("the Commissioner") denying her son Jerry Scott Coon's ("Claimant") application for disability benefits. Doc. No. 1. Ms. Velez raises four arguments challenging the Commissioner's final decision, and, based on those arguments, requests that the matter be reversed for an award of benefits. Doc. No. 20, at 10, 20, 22, 25, 28. The Commissioner requests that the decision of the Administrative Law Judge ("the ALJ") be affirmed. *Id.* at 28. For the reasons stated herein, the Commissioner's final decision is **AFFIRMED**.

**I. PROCEDURAL HISTORY.**

On November 13, 2013, Claimant filed an application for disability insurance benefits. R. 82, 183–88. He alleged that he became disabled on May 20, 2013. *Id.* Claimant's application was denied initially and on reconsideration, and he requested a hearing before an ALJ. R. 96–98, 107–112, 114. On September 22, 2016, Claimant was found deceased. The Certification of Death

---

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge. *See* Doc. Nos. 14, 17–19.

states that Claimant committed suicide. R. 202–03. Claimant's mother, Ms. Velez, subsequently completed Notice Regarding Substitution of Party Upon Death of Claimant. R. 175.

On April 13, 2017, a hearing was held before the ALJ regarding Claimant's application for disability insurance benefits. R. 33–78. Ms. Velez, Claimant's stepfather Jose Velez, and a vocational expert ("VE") testified at the hearing. *Id.* After the hearing, the ALJ issued an unfavorable decision finding that Claimant was not disabled from his alleged onset date through his date of last insured. R. 15–26. Ms. Velez sought review of the ALJ's decision by the Appeals Council. R. 182. On April 27, 2018, the Appeals Council denied the request for review. R. 1–6. Ms. Velez now seeks review of the final decision of the Commissioner by this Court. Doc. No. 1.

## II.   THE ALJ'S DECISION.[2]

After careful consideration of the entire record, the ALJ performed the five-step evaluation process as set forth in 20 C.F.R. § 404.1520(a). R. 15–26.[3] The ALJ found that Claimant met the insured status requirements of the Social Security Act through March 31, 2017. R. 17. The ALJ concluded that Claimant had not engaged in substantial gainful activity from the alleged disability onset date, May 20, 2013, through the date of last insured. R. 18. The ALJ found that Claimant suffered from the following severe impairments: attention deficit hyperactivity disorder; bipolar disorder; depression; and bulging lumbar disc. *Id.* The ALJ concluded that Claimant did not have

---

[2] Upon a review of the record, I find that counsel for the parties have adequately stated the pertinent facts of record in the Joint Memorandum. Doc. No. 20. Accordingly, I adopt those facts included in the body of the Joint Memorandum by reference without restating them in entirety herein.

[3] An individual claiming Social Security disability benefits must prove that he or she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). The five steps in a disability determination include: (1) whether the claimant is performing substantial, gainful activity; (2) whether the claimant's impairments are severe; (3) whether the severe impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) whether the claimant can return to his or her past relevant work; and (5) based on the claimant's age, education, and work experience, whether he or she could perform other work that exists in the national economy. *See generally Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004) (citing 20 C.F.R. § 404.1520).

an impairment or combination of impairments that met or equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

Based on a review of the record, the ALJ found, through the date of last insured, that Claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in the Social Security regulations[4]; however,

> [t]he claimant could never climb ladders, ropes, and scaffolds. The claimant could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, or crawl. The claimant must have avoided concentrated exposure to workplace hazards. The claimant could perform simple, routine, repetitive tasks with occasional changes in a routine work setting. The claimant could occasionally interact with coworkers and the general public.

R. 19.

After considering the record evidence, Claimant's RFC, and the testimony of the VE, the ALJ found that Claimant was unable to perform any past relevant work. R. 24. Nonetheless, considering Claimant's age, education, work experience, and RFC, the ALJ concluded that there were jobs existing in significant numbers in the national economy that he could have performed, including laminator, lens inserter, or fishing reel assembler. R. 25–26. Accordingly, the ALJ concluded that Claimant was not disabled from the alleged disability onset date through the date of last insured. R. 26.

---

[4] The social security regulations define sedentary work to include:

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a).

### III. STANDARD OF REVIEW.

Because administrative remedies were exhausted in this matter, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g), as adopted by reference in 42 U.S.C. § 1383(c)(3). The scope of the Court's review is limited to determining whether the Commissioner applied the correct legal standards and whether the Commissioner's findings of fact are supported by substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's findings of fact are conclusive if they are supported by substantial evidence, 42 U.S.C. § 405(g), which is defined as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's decision, when determining whether the decision is supported by substantial evidence. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). The Court may not reweigh evidence or substitute its judgment for that of the Commissioner, and, even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

### IV. ANALYSIS.

In the Joint Memorandum, which I have reviewed, Ms. Velez raises four assignments of error: (1) the ALJ erred in evaluating the opinions of Joseph DeLuca, M.D., Claimant's treating physician; (2) the ALJ erred in evaluating the opinions of Theodore Weber, Psy.D., a state agency psychiatric consultant; (3) the ALJ applied the incorrect legal standards to Claimant's allegations of

pain and disabling limitations; and (4) the ALJ erred in her consideration of the hearing testimony of Mr. and Ms. Velez. Doc. No. 20. I will address each of these issues in turn.[5]

A.     Medical Opinions.

In determining a claimant's RFC, the ALJ must consider all relevant evidence, including the medical opinions of treating, examining, and non-examining medical sources. *See* 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The ALJ must consider a number of factors when weighing medical opinions, including: (1) whether the physician examined the claimant; (2) the length, nature, and extent of the physician's relationship with the claimant; (3) the medical evidence supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. *Id.* § 404.1527(c). "These factors apply to both examining and non-examining physicians." *Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830, 832 (11th Cir. 2017) (citing 20 C.F.R. §§ 404.1527(e), 416.927(e)).[6]

A treating physician's opinion must be given substantial or considerable weight, unless good cause is shown to the contrary. *See* 20 C.F.R. § 404.1527(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence). There is good cause to assign a treating physician's opinion less than substantial or considerable weight, where: (1) the treating physician's opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the treating physician's opinion is conclusory or inconsistent with the physician's own medical records. *Winschel*, 631 F.3d at 1179 (citing *Phillips*, 357 F.3d at 1241).

---

[5] In one sentence at the conclusion of the joint memorandum, the Commissioner argues that "Cheryl Velez is not the proper payee for any benefits as [Claimant] has children." Doc. No. 20, at 28 (citing 20 C.F.R. § 404.503(b)). Because the Commissioner failed to properly brief this issue, or provide any evidence in support, the undersigned has concluded that the Commissioner has waived this argument for purposes of this Memorandum of Decision.

[6] Unpublished opinions of the Eleventh Circuit are cited as persuasive authority. *See* 11th Cir. R. 36–2.

"Generally, the opinions of examining physicians are given more weight than non-examining, treating more than non-treating, and specialists on issues within their areas of expertise more weight than non-specialists." *Davis v. Barnhart,* 186 F. App'x 965, 967 (11th Cir. 2006). The opinion of a non-examining physician is generally entitled to little weight and, "taken alone, do[es] not constitute substantial evidence." *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985). The ALJ, however, may rely on a non-examining physician's opinion where it is consistent with the medical and opinion evidence. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (holding that the ALJ did not err in relying on a consulting physician's opinion where it was consistent with the medical evidence and findings of the examining physician).

### 1.   Dr. DeLuca.

Dr. DeLuca was Claimant's treating physician from October 2013 through January 2016. R. 454. Dr. DeLuca discharged Claimant as a patient on January 22, 2016 because Claimant's drug screen came back positive for Methadone and negative for Klonopin. R. 418.

On December 12, 2013, Dr. DeLuca completed a Treating Source Mental Status Report at the behest of the Office of Disability Determinations. R. 352–54. In the status report, Dr. DeLuca opined that Claimant suffered from mood swings; his thought process was circumstantial and tangential; he did not suffer from delusions, unrealistic thinking, or suicidal/homicidal thinking; he had no hallucinations or perceptual disturbances; he had poor concentration; immediate memory; and psychomotor retardation. *Id.* The diagnosis was bipolar disorder, and the prognosis was poor. R. 353. Dr. DeLuca opined that Claimant was not competent to independently manage funds. R. 354.

On October 21, 2014, Dr. DeLuca completed a Treating Source Orthopedic Questionnaire at the request of the Office of Disability Determinations. R. 378–79. In that questionnaire, Dr.

DeLuca indicated that Claimant suffered from chronic pain and limited range of motion of the spine; that Claimant did not require a hand-held assistive device; and that Claimant was capable of performing fine/gross manipulations on a sustained basis with his hands. *Id.*

On April 12, 2017, after Dr. DeLuca was no longer Claimant's treating physician, Dr. DeLuca completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) form. R. 452–54. On that form, Dr. DeLuca performed a "check-the-box" analysis indicating that Claimant had a poor/no ability to function in several work related-categories, such as following work rules; relating with coworkers; dealing with the public; interacting with supervisors; dealing with work stresses; functioning independently; maintaining attention and concentration; understanding even simple job instructions; maintaining personal appearance; behaving in an emotionally stable manner; or relating predictably in a social situation. *Id.* Dr. DeLuca opined that Claimant could not manage benefits in his own best interest. R. 454.

In the decision, the ALJ discussed Claimant's medical records from Dr. DeLuca. R. 21. The ALJ noted that "Dr. DeLuca's treatment records were generally within normal limits, despite the diagnoses." R. 21 (citing Exhibits 1F, 3F). The ALJ further noted Dr. DeLuca's mental status findings on the mental status questionnaire. *Id.* (citing Exhibit 2F; R. 352–54). The ALJ found that Dr. DeLuca's "observation of mood swings and poor concentration[] support the claimant being limited to performing simple tasks." R. 23. The ALJ then noted as follows:

> On December 12, 2013, Dr. DeLuca opined the claimant is not competent to independently manage his own benefits. He opined the claimant's capacity for understanding and memory, sustained concentration and persistence, social interaction, and adaptation is poor (Exhibit 2F). On October 21, 2014, Dr. DeLuca opined that the claimant did not medically require a hand-held assistive device to ambulate independently (Exhibit 6F). On April 12, 2017, Dr. DeLuca completed a medical assessment of ability to do work-related mental activities. Dr. Deluca opined the claimant's ability to make occupational adjustments, make performance adjustments, and make personal/social adjustments are poor. He did not believe the claimant is capable of managing benefits (Exhibit 13F).

> The undersigned gives partial weight to the opinions of Dr. DeLuca (Exhibits 2F, 6F, and 13F). The claimant's inability to manage his own benefits is supported by the record containing some evidence of substance abuse. His opinion that the claimant does not medically require a handheld assistive device to ambulate independently, is consistent with his findings that the claimant's gait was slow but otherwise normal. As to his opinions regarding the claimant's poor ability to do work-related mental activities, Dr. DeLuca's notations regarding the claimant's mood swings, paranoia, and memory recall did not create such extreme limitations.

R. 23–24. Later in the decision, the ALJ noted that "[t]here was little variation in treatment Dr. DeLuca's treatment records, suggesting that the claimant's medications were stabilized, even if the claimant continued to experience difficulties." R. 24 (citing Exhibits 1F, 3F, 14F).

Based on the foregoing, it appears that the ALJ credited Dr. DeLuca's opinions from December 12, 2013 and October 25, 2014, and only afforded partial weight to Dr. DeLuca's opinions in the final April 12, 2017 Medical Assessment of Ability to Do Work-Related Activities (Mental) form. *Id.* The ALJ gave only partial weight to the 2017 Medical Assessment because Dr. DeLuca's limitations/diagnoses regarding mood swings, paranoia, and memory recall did not indicate such extreme limitations. *Id.*

Ms. Velez argues that the ALJ erred in giving Dr. DeLuca's opinions "partial weight": the "ALJ's decision ignores the elephant in the room" because "Claimant committed suicide as a result of his mental impairments." Doc. No. 20, at 12. She contends that the ALJ overlooked Dr. DeLuca's treatment notes that documented reports of suicidal ideation, hallucinations, delusions, and mood swings with psychosis, and thus improperly cherry-picked findings from Dr. DeLuca's records in order to reject his opinion. *Id.* (citing Exhibit 9F).

Ms. Velez's arguments are unpersuasive for three primary reasons. First, while undeniably tragic, Ms. Velez cites to no authority that mandates a finding of disability based on a claimant committing suicide. To the contrary, the Commissioner cites authority suggesting that a claimant's

suicide does not alone dictate a finding of disability. *See Stewart v. Colvin*, 640 F. App'x 777, 779–80 (10th Cir. 2016) ("[E]ven if Mrs. Stewart is correct that her husband's bipolar disorder and unemployment placed him at a disproportionately high risk for suicide, it doesn't amount to evidence that he was unable to 'engage in any substantial gainful activity by reason of [his bipolar disorder].'" (citing 42 U.S.C. § 416(i)(1)). And, contrary to Ms. Velez's arguments, the ALJ did acknowledge in the decision that Claimant committed suicide; the ALJ also acknowledged testimony that Claimant's homelessness and depression motivated him to commit suicide. R. 22. Moreover, the ALJ cited treatment records wherein Claimant reported thoughts of suicide, R. 21–22 (citing Exhibit 11F). And the ALJ found that Dr. DeLuca's "observation of mood swings and poor concentration[] support the claimant being limited to performing simple tasks." R. 23. Accordingly, it is clear from the decision that the ALJ did not ignore the fact that Claimant committed suicide or Dr. DeLuca's treatment records, or that Claimant experienced suicidal ideations.

Second, as the Commissioner argues, because Dr. DeLuca was Claimant's treating physician only through January 2016, Dr. DeLuca was not Claimant's treating physician when he completed the April 12, 2017 Medical Assessment of Ability to do Work-Related Activities (Mental) Form. R. 452–54. Accordingly, Dr. DeLuca's opinions in the April 12, 2017 Medical Assessment were not entitled to any particular deference. *See* 20 C.F.R. § 404.1502 (effective through March 27, 2017) ("We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability. In such a case, we will consider the acceptable medical source to be a nontreating source."); *see also Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 744 (6th Cir. 2011) (finding that the treating physician rule no longer

applied when the claimant last saw the physician more than a year prior to physician's opinion (citing *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 985–87 (6th Cir. 2009))).

Third, even if deference were owed to the April 12, 2017 Medical Assessment, the ALJ gave valid reasons for only affording Dr. DeLuca's opinions partial weight, and those reasons are supported by substantial evidence. The ALJ found that: (1) Dr. DeLuca's opinions were not supported by his own notations; (2) Dr. DeLuca's treatment records were generally within normal limits, despite the diagnoses; and (3) there was little variation in Dr. DeLuca's treatment records, "suggesting that the claimant's medications were stabilized." These are valid reasons to discount the opinion of a treating physician. *See, e.g.*, *Barnum v. Comm'r, Soc. Sec. Admin.*, 555 F. App'x 903, 905 (11th Cir. 2014) (finding substantial evidence supported the ALJ's decisions to discount the treating physician's opinion where the medical exams showed normal findings); *Gilabert v. Comm'r of Soc. Sec.*, 396 F. App'x 652, 655 (11th Cir. 2010) (recognizing that good cause reasons for rejecting a treating physician's opinion include that the opinion is inconsistent with the doctor's own medical records, the opinion is not bolstered by the evidence, and that the evidence supports a contrary finding). In addition, I note that the ALJ specifically stated that some of Dr. DeLuca's findings supported the ALJ's RFC determination, *see* R. 23 (finding Dr. DeLuca's "observation of mood swings and poor concentration[] support the claimant being limited to performing simple tasks").

Because the ALJ's decision to afford partial weight to the opinions of Dr. DeLuca is supported by substantial evidence, I find no reversible error. *See Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873 (11th Cir. 2011) ("[W]here the ALJ articulates specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error.").

*2. Dr. Weber.*

On October 17, 2014, non-examining state agency consultant Dr. Weber reviewed the record and provided an opinion regarding Claimant's mental impairments. R. 360–76. Dr. Weber opined that Claimant had moderate limitations in activities of daily living; maintaining social functioning; and maintaining concentration, persistence, or pace, with no episodes of decompensation. R. 370; *see also* R. 374–76. He noted, among other things, that Claimant took care of his personal hygiene; needed no reminders for medication; made simple meals; did light cleaning; drove; shopped; could use money; socialized; had some difficulty getting along with others; reported difficulty following instructions; and had difficulty getting along with authority. R. 372.

> The ALJ stated as follows as it relates to Dr. Weber's opinions:
>
> As for the opinion evidence, Theodore Weber, Psy.D., State agency psychiatric consultant, opined that the claimant would be able to understand and remember simple instructions, but would have difficulties with more detailed instructions. The claimant could complete simple tasks/work procedures and be able to make work decisions, but would have difficulties with maintaining attention and concentration for extended periods and would have difficulties carrying out detailed instructions. The claimant could cooperate and be socially appropriate, but would have difficulties accepting criticism from supervisors. The claimant had some difficulty reacting/adapting appropriate to the work environment and had some difficulties setting realistic goals (Exhibits 4F and 5F).
>
> The undersigned gives great weight to the opinions of Dr. Weber, State agency psychiatric consultant (Exhibit 4F and 5F). The combined effects of the claimant's mental impairments, including Dr. DeLuca's observation of mood swings and poor concentration, support the claimant being limited to performing simple tasks. Additionally, the claimant's impairments suggest that social functioning limitations are consistent Dr. DeLuca's notation that the claimant experiences psychosis (Exhibit 13F).

R. 22–23.

Ms. Velez contends that the ALJ erred in affording great weight to Dr. Weber's opinions because such opinions were outdated and not based on a complete record in that Dr. Weber did not consider Claimant's suicide. Doc. No. 20, at 20–21. Ms. Velez argues that had Dr. Weber

considered Claimant's suicide, such consideration could have altered Dr. Weber's opinion regarding whether or not Claimant's mental impairment met or equaled a listing. *Id.* at 21.

The Commissioner in essence argues that Ms. Velez cannot rely solely on Claimant's suicide to argue that the ALJ erred in affording great weight to Dr. Weber's opinions—Dr. Weber's opinions were supported by mental examination findings and the effectiveness of treatment with conservative medicine. *Id.* The Commissioner argues that the ALJ is entitled to give great weight to a state agency consultant if supported by the evidence, and the ALJ may properly give a non-examining physician's opinion more weight than a treating physician's opinion. *Id.*

I find that the ALJ did not err in affording great weight to the opinions of Dr. Weber. First, even though Dr. Weber's opinion predated Claimant's suicide, that did not necessarily preclude the ALJ from affording Dr. Weber's opinions great weight. *Cf. Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (noting that "even if the non-examining doctor was unable to review all of [claimant's] medical records before making her RFC determination, she cited several portions of the record in support of her conclusions, and the ALJ, who made the ultimate determination, had access to the entire record as well as [the claimant's] testimony").

Second, the ALJ found that Dr. Weber's opinions were consistent with the evidence of record, namely Dr. DeLuca's observation of mood swings and poor concentration. R. 23. The ALJ also found that the social functioning limitations were consistent with Dr. DeLuca's notation that Claimant experiences psychosis. *Id.* Because the ALJ found that Dr. Weber's opinions were consistent with Dr. DeLuca's treatment records, and those findings are supported by substantial evidence, the ALJ did not err in giving great weight to Dr. Weber's opinions regarding Claimant's mental limitations. *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (holding that the ALJ did not err in relying on a consulting physician's opinion where it was

consistent with the medical evidence and findings of the examining physician); *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 874 (11th Cir. 2011) (finding ALJ did not err in giving significant weight to opinions of state agency medical consultants regarding the claimant's functional limitations where those opinions were consistent with treatment records of treating physician; the only opinion challenged by the claimant that was inconsistent with the treating physician's opinion was an opinion which the ALJ properly gave little weight because it was contradicted by treatment records). Accordingly, Claimant's second assignment of error is unavailing.

B. <u>Claimant's Subjective Complaints of Pain and Disabling Limitations</u>.

A claimant may establish "disability through his own testimony of pain or other subjective symptoms." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). A claimant seeking to establish disability through his or her own testimony must show:

> (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). If the ALJ determines that the claimant has a medically determinable impairment that could reasonably produce the claimant's alleged pain or other symptoms, the ALJ must then evaluate the extent to which the intensity and persistence of those symptoms limit the claimant's ability to work. 20 C.F.R. § 404.1529(c)(1). In doing so, the ALJ considers a variety of evidence, including the claimant's history, the medical records and laboratory findings, the claimant's statements, medical source opinions, and other evidence of how the pain affects the claimant's daily activities and ability to work. *Id*. § 404.1529(c)(1)–(3). "If the ALJ decides not to credit a claimant's testimony as to her pain, he must articulate explicit and adequate reasons for doing so." *Foote*, 67 F.3d at 1561–62. The Court will not disturb a clearly articulated credibility finding that is supported by substantial evidence. *Id*. at 1562.

> Here, the ALJ stated in the decision:
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> . . . .
>
> In assessing the claimant's allegation of disability, the undersigned has considered several factors. There was little variation in treatment Dr. DeLuca's treatment record, suggesting that the claimant's medications were stabilized, even if the claimant continued to experience difficulties (Exhibits 1F, 3F, and 14F). The claimant's treatment was conservative and nonaggressive. There were large gaps between appointments, particularly after the claimant was discharged. The undersigned notes that the claimant did not require impatient treatment until after he stopped receiving medication from Dr. DeLuca, suggesting that his symptoms were controlled when he was actively involved in treatment (Exhibits 11F). After he was discharged form Dr. DeLuca's practice, the claimant did not require emergency medical treatment for his back pain. In consideration of all these factors, the undersigned finds that the claimant's allegations of disability are not fully consistent with the treatment record as a whole.

R. 22, 24.

Accordingly, the ALJ found Claimant's subjective complaints of pain not entirely credible for the following reasons: (1) Claimant's medications were stabilized; (2) Claimant's treatment was conservative and nonaggressive; (3) there were large gaps between appointments after Dr. DeLuca discharged Claimant; (4) Claimant's symptoms were controlled when actively involved in treatment; and (5) Claimant did not seek emergency treatment following his discharge by Dr. DeLuca. *Id.*

Ms. Velez argues that the ALJ once again "ignored" the fact that Claimant committed suicide in rejecting Claimant's subjective complaints of pain. Doc. No. 20, at 22–23. However, as discussed above, the decision reflects that the ALJ considered that Claimant committed suicide. And the fact that Claimant committed suicide is not necessarily dispositive of the issue of whether

- 14 -

Claimant was disabled under the Social Security Act. *See, e.g.*, *Stewart*, 640 F. App'x at 779–80. Although Ms. Velez points to some records demonstrating that Claimant "repeatedly reported to Dr. DeLuca that he as experiencing suicidal ideation," *see* R. 390, 392, 400, 400, 404, the records from Dr. DeLuca demonstrate that, more often than not, Claimant did *not* report experiencing suicidal ideation to Dr. DeLuca, *see* R. 330–31, 335–36, 341, 394, 396, 398, 402, 406, or no notation regarding suicidal ideation was made, *see* R. 327, 347, 358, 408, 410, 412, 414, 416.

Ms. Velez does not argue that the remaining reasons set forth by the ALJ to discount Claimant's subjective symptoms are not supported by substantial evidence. Accordingly, she has waived that argument before this Court. *Cf. Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (refusing to consider an argument that the claimant failed to raise before the district court). Even if she had not, the ALJ provided good cause reasons, supported by substantial evidence, to support his finding that "[C]laimant's statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (noting that conservative treatment undermined claimant's claims of disability); *Watson v. Heckler*, 738 F.2d 1169, 1173 (11th Cir. 1984) (finding failure to seek treatment was basis for discounting subjective complaints of pain); *see also Alcott v. Comm'r of Soc. Sec.,* No. 6:12-cv-453-Orl-DAB, 2013 WL 646173, at *9 (M.D. Fla. Feb. 21, 2013) (finding that the claimant's stability on medications was an appropriate consideration when assessing the claimant's subjective complaints).

For these reasons, Ms. Velez's third assignment of error is unpersuasive.

C. <u>Statements of Third Parties</u>.

The testimony of family members can provide "evidence of a claimant's subjective feelings of pain." *Osborn v. Barnhart*, 194 F. App'x. 654, 666 (11th Cir. 2006). Here, in the decision, the

ALJ noted that she considered the testimony and statements of Ms. Velez as well as those of Jose Velez, Claimant's stepfather. R. 24; *see also* R. 22. The ALJ concluded:

> Their statements regarding the claimant's physical limitations provided some insight into the claimant's limitations, and partially contribute to the undersigned assessing a sedentary residual functional capacity. However, their statements regarding the claimant's physical and mental impairments do not establish that the claimant is disabled. There is no indication that these individuals are medically trained to make exacting observations as to dates, frequencies, types, and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms.

*Id.*

Ms. Velez argues that although the ALJ stated that she considered the testimony of Mr. and Ms. Velez as it related to Claimant's physical limitations, the ALJ erred in failing to consider their testimony as it related to Claimant's mental state before he committed suicide. Doc. No. 20, at 26.

Claimant's argument is belied by the record. The ALJ specifically stated that she considered Mr. and Ms. Velez's statements concerning both Claimant's physical *and mental* impairments. R. 24. The ALJ also specifically recounted Mr. and Ms. Velez's testimony from the hearing, which included consideration of Mr. Velez's testimony that Claimant was in constant pain; he experienced depression; he reported hearing voices in his head and seeing things from the corner of his eye; and Mr. Velez believed that Claimant's homelessness and depression pushed him over the edge, motivating him to commit suicide. *See* R. 22. The ALJ also noted Ms. Velez's testimony that Claimant did not handle his finances responsibly and that Claimant talked to her about unusual fantasies. *See id.* As the Commissioner argues, the ALJ also partially credited Mr. and Ms. Velez's testimony in assessing a sedentary RFC. *See id.*

Because the decision demonstrates that the ALJ considered properly considered these third-party statements, I find no reversible error.

### V. CONCLUSION.

For the reasons stated herein, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**.

2. The Clerk of Court is **DIRECTED** to enter judgment in favor of the Commissioner and **CLOSE** the case.

**DONE** and **ORDERED** in Orlando, Florida on February 27, 2020.

*[signature]*

LESLIE R. HOFFMAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record